Judge Grimke
delivered the opinion of the court:
This was a bill in chancery, filed for the purpose of perfecting an alleged agreement to insure. The premium was not paid; the policy, though made out, was never delivered; and it describes the goods as the property of E. H. Flint only.
*512 There can be no doubt, that if an agreement has been made, which is binding upon the parties, a court of equity will decree a-policy to be executed and delivered. And it is equally certain, that where it is proved that a policy has, by mistake, been reduced to writing in terms which are not conformable to the real intention of the parties, that the court will compel the policy to be rectified. This, which was once considered a doubtful proposition, has been completely settled since the case of Henkle v. Ray. Exc. Ins. Co., 1 Ves. sen. 317, and the principle has been illustrated and enforced, by repeated decisions in England and the United States. The view which we have taken of the case, however, will render it unnecessary to consider whether the facts disclosed will enable the court to grant relief on this ground.
It is proved to have been a rule in this office, not to consider the insurance effected until the premium was paid or the policy delivered, or until a written acceptance was entered on the answering books; and it is also stated in the evidence, that a. copy of this rule was constantly kept posted up in the office. The legality of these special rules has boon questioned ; but I know of no principle which forbids underwriters from limiting and qualifying the general responsibility which would otherwise ^attach to them. The case has been likened to that of common carriers. But there is, in reality, the greatest imaginable difference between the two cases. A common carrier is under a common law obligation to carry goods; and the law has not»therefore, given him a general permission to exempt himself from responsibility. But the rule, even'with regard to them, is very different from what is supposed. The indulgence is afforded them, of qualifying their general liability by limitations not inconsistent with their common law obligation. Formerly a carrier might, where he had just ground for doing so, decline altogether to take goods; or, ii he consented to accept them, he might protect himself by the special terms upon which he agreed to receive them. Bodenham v. Bennett, 4 Price, 34. And the receipt of goods, upon such conditions, was considered as a special acceptance, and was usually made in each particular case. But, in recent times, a mode has arisen of effecting the same object, by means of a general notice, intimating to the public the terms upon which the carrier consents to take goods. The legality of theselioticos, in the case of common carriers, and the policy of adopfc *513 ing them, have been frequently questioned, and their introduction has been regretted by many eminent and learned persons, 4 Camp. 41; 8 Taunt. 146; but they are now established to be legal, and are constantly received and acted upon in courts of justice.
In Nicholson v. Willan, 5 East, 507, an objection to their validity came formerly before the court, and Lord Ellenborough observed that “ inasmuch as carriers were deemed fully competent to limit their own responsibility in all cases by special contract, and as there is no case in the books in which the right of a carrier thus to-limit, by special contract, his own responsibility, has ever been, by express decision, denied, we can not do otherwise than sustain such right, however liable to abuse it may be.”
Nothing is more common than to post up rules (as was done by these defendants) for the purpose of giving information to the public. It is said that the notice should be fixed in some conspicuous part, that persons delivering goods may have ample means of seeing the terms on which the business is conducted, 2 Camp. 415; 3 Camp. 28 ; and there does not appear to be any objection on this ground to the notice in this instance.
Admitting, therefore, as a general rule, that the agreement to insure is complete, although the premium has not been paid, yet that rule has been varied by the notice in this case, and by the ^particular terms upon which the underwriters agreed to insure. But I apprehend that no case can be found in the English books during the last fifty years, in which the premium has not been paid by the insured, and yet the contract considered complete, either at law or in equity. The actual state of the law in England absolutely forbids that this should be the case. By statute, the premium is required to be inserted in the policy, and the acknowledgment contained in the policy of the receipt of the premium by the insurer is conclusive as between him and the insured, except in a case of fraud. The case is not like a deed of conveyance, where, although the receipt of the consideration money is acknowledged in the deed, an action may be brought to recover it, if it has not been really paid. The cases which are found in the books, where actions have been brought to recover the premium, are never against the insured, but against the broker. As between the underwriters and the insured, the acknowledgment in the policy stands in the place of the actual payment of the money, and is conclusive evidence of that fact. The former *514 are, in the absence of any fraud, precluded from recovering it against the insured. 1 Camp. 532.
It is, I imagine, in consequence of this state of tho law, in Great Britain, that the insurance offices in the United States have generally adopted the practice of framing particular rules, for the conduct of their business, and as a guide to those who transact business with them. Tho policies in the United States are framed after the model of those in England; they generally acknowledge the reeoipt of the premium, although we have no statute like the British requiring such a clause to be inserted, and drawing after it the consequences which I have mentioned.
The case of Perkins v. Wash. Ins. Co., 4 Com. 645, has been referred to by the complainant’s counsel; and yet it is impossible not to see that it is very strong authority on behalf ol the defendants. For although the letters from the underwriters in New York to their agent in Georgia express that the policy should take effect .from the time the premium is paid and received at New York, yet rthe company, in their answer, admit that, they sent printed proposals to him at Savannah, in which the words “and received at .New York,” were left out. These proposals were actually hung up in the office, and the premium had been paid to the agent, who was quoad hoc, the insurer; and it was very naturally decided that these proposals should govern the contract. Tho agreement to insure was considered complete *in equity, because the premium had been received in compliance with the proposals, and ¡there appears to have been no question of the right of the company or their agent to frame particular rules for the conduct of their business.
It was, then, a rule in this office not to consider the insurance ■ effected, until the premium was paid, or the policy delivered, or until a written acceptance was entered on the books; and not one .of these conditions has been complied with.
But there are other circumstances which show that the complainants are not entitled to relief. The deposition of McCormick proves that in consequence of a previous misunderstanding between Jones (the agent) and the company, the former was particularly notified that no insurance should be considered as effected, ■whether he acted for himself or on behalf of others, until the ¡premium was actually paid.
The complainants have¡not complied with the general rules of *515 the office, nor with the particular agreement between their agent and the defendants; the contract to insure was not completed in equity, and the complainants are not entitled to relief.